IVAN D. JONES, JR. v. WESLEY VERNON HORTON and MORRIS CRAWLEY JONES.

(Filed 2 June, 1965.)

1. **Automobiles § 41g—   Evidence held for jury on question of whether excessive speed in entering intersection was proximate cause of collision.**

    Plaintiff's evidence to the effect that appealing defendant, traveling north, approached the intersection at a speed in excess of 60 miles per hour, that a vehicle entered the intersection from appealing defendant's right and turned right in front of appealing defendant, that to avoid hitting this car appealing defendant turned to his left and was traveling on his left side of the highway when he saw plaintiff's vehicle approaching from the north, that plaintiff's vehicle had been driven off the highway and onto a parking lot on plaintiff's right when defendant's vehicle collided therewith, *held*

sufficient to take the case to the jury, it being for the jury to determine whether defendant's negligence in violating G.S. 20-141(b)(c), was a proximate cause of the accident in that his excessive speed made it impossible for him to control his vehicle in the emergency, and whether his failure to keep a proper lookout prevented him from ascertaining that plaintiff's vehicle had gotten completely off the hard-surface so that he could have proceeded in safety on his left side of the highway.

**2. Automobiles §§ 19, 43—**

Evidence that a third vehicle entered an intersection from defendant's right and turned right, causing defendant to lose control and collide with plaintiff's vehicle, which approached from the opposite direction, *held* not to insulate defendant's negligence in approaching the intersection at excessive speed, nor does it entitle defendant to rely upon the doctrine of sudden emergency, if defendant's excessive speed contributed to the emergency and was the proximate cause of defendant's inability to control his vehicle.

**3. Negligence § 8—**

Where the jury answers the issue of negligence in the affirmative as to one defendant and in the negative as to the other in a suit instituted by plaintiff against both as joint tort-feasors, the one defendant may not complain that the other was exonerated, since the author of negligence proximately causing injury is liable therefor irrespective of the liability of others.

**4. Automobiles § 38—**

Where it is made to appear that the witness observed the lights of a car approaching from the opposite direction at night for a distance of some 130 yards, and saw that the car was "swaying back and forth" because of its speed, it is competent for the witness to testify that its speed was in excess of 60 miles per hour, the weight and credibility of the testimony being for the jury.

**5. Appeal and Error § 1—**

The verdict of the jury upon conflicting evidence is conclusive, the jurisdiction of the Supreme Court being limited to matters of law and legal inference. Constitution of North Carolina, Art. IV, § 8.

APPEAL by defendant Horton from *Bone, E. J.,* Second August 1964 Regular Civil Session of WAKE.

Action to recover for personal injuries and property damages sustained in an automobile collision between plaintiff and the appealing defendant Horton. As between plaintiff and defendant Horton these facts are undisputed: U. S. Highway No. 401, the dominant highway, and rural road No. 1103 intersect at right angles about 6 miles south of Louisburg in a 60 MPH zone. Between a hillcrest north of the intersection and one south of the intersection, each 300-400 feet from the center of the intersection, the road is level for about 800 feet. On March 31, 1963, at about 1:00 a.m., plaintiff, operating his 1957 Austin-Healey, was approaching the intersection from the north on Highway 401 at

the same time defendant Horton, operating a Ford, was approaching from the south. Defendant Jones, operating a Chevrolet pickup truck, also was approaching the intersection from the east on No. 1103, on which the State Highway Commission had erected stop signs. Jones entered No. 401 from No. 1103 and headed north. (According to Horton, Jones entered from a right-hand cutoff, instead of making a right-angle turn from the intersection. As to this, plaintiff did not know.) In order to avoid a collision with defendant Jones, Horton turned to his left into the southbound lane for traffic on No. 401. Plaintiff, in an effort to avoid a collision with one or both of defendants, pulled to his right completely off the hard-surface, and Horton continued to his left across the southbound traffic lane and collided with plaintiff, "completely off the hard-surface." In the collision plaintiff's automobile was damaged, and he suffered personal injuries.

Plaintiff brought this action against both Horton and Jones, alleging that their joint and concurring negligence proximately caused his injury and damage. He alleges that Jones was negligent in that (1) he entered Highway 401 from a servient road without stopping and (2) he failed to yield the right of way to Horton, who was approaching on the dominant thoroughfare. Plaintiff alleges that Horton was negligent in that (1) he approached the intersection at a speed in excess of 60 MPH, (2) he failed to keep a proper lookout, and (3) he collided with plaintiff off the highway on plaintiff's right. Defendant Jones' answer is not in the record. Defendant Horton denies that he was in anywise negligent, alleges that the negligence of defendant Jones was the sole proximate cause of his collision with plaintiff, and pleads that plaintiff was contributorily negligent in that (1) he drove his automobile at a high and dangerous speed and (2) he failed to slow down for the intersection, to keep a proper lookout, to have his car under control, and "to apply brakes, stop, turn aside, continue straight ahead, or to take any other precaution in time to avoid the collision as he could and should have done."

Plaintiff's version of the accident is that when he came over the hilltop north of the intersection at 45-50 MPH, he observed the Chevrolet truck of defendant Jones entering the intersection and turning north. Plaintiff dimmed his lights and slowed his car. At almost the same instant he saw Horton's Ford behind the truck in the northbound lane of No. 401. In plaintiff's opinion Horton was traveling in excess of 60 MPH, between 75-80 MPH, "swaying back and forth." Plaintiff was 350-400 feet from the pickup truck when he first saw it, and the Ford was 50-100 feet behind the truck. The Ford came up behind the pickup and suddenly pulled into plaintiff's lane to pass it. "That put a vehicle in both lanes, both lanes taken." Plaintiff applied his brakes and at 15

MPH pulled completely off the highway into the parking lot of the store located in the northwest corner of the intersection. At that time the Ford was still traveling north in its left lane. When plaintiff was 15-20 feet off the pavement and was traveling at 10 MPH, the Ford also left the pavement. When, having slowed to about 10 MPH, plaintiff was 25-27 feet west of the pavement into the parking lot and 200-225 feet north of the center of the intersection, the left front of the Ford struck the left front of the Austin-Healey. Skidmarks made by Horton's Ford started south of the center of the intersection (about 46 feet, according to a diagram made by plaintiff) and continued 75-100 feet in the right lane before crossing the center line, angling for a distance of 35-50 feet before they straightened out for 125-150 feet in the left lane. They then veered to the left off the pavement to the point of impact. The total length of the skid marks was 225-235 feet. After the impact plaintiff's Austin-Healey had only salvage value.

Defendant Jones did not stop.

Horton's version is that, when he was 200-250 feet south of the intersection, traveling at a speed of 45-55 MPH, he observed the Jones pickup slowing down on No. 1103 as if to stop before entering the intersection. Instead, when Horton was only 50-60 feet away, Jones turned to his right into a cutoff lane (which made a grassy triangle at the northeast corner of the intersection) and entered No. 401 slightly north of its right-angle intersection with No. 1103. Horton applied his brakes, his tires squalled, and he cut to the left at about 20 MPH. He had not then seen plaintiff's car approaching. When he saw plaintiff come over the hillcrest 300-350 feet away, he pulled into the parking lot in the northwest corner of the intersection. After he had stopped, plaintiff, sliding on the dirt of the shoulder, came "right at" him and struck him at a speed in excess of 10 MPH. The two cars collided at an angle; the left front and side of plaintiff's car struck the right, front wheel of the Horton Ford. A young man who came to the scene of the collision overtook defendant Jones and secured his license number.

One of the five passengers in the Horton car testified that plaintiff's car was on the west shoulder at the time defendant Horton left the highway.

Jones' version of the accident is that he stopped at the intersection. Seeing no traffic approaching from either direction, he made a right-angle turn into No. 401 and headed north. He did not use the cutoff road. After he was proceeding north in the right lane, plaintiff came over the hillcrest and turned off the road to his right. Thereafter defendant Jones heard a crash and slowed down long enough to see a man walking from the wreck. Jones then "just went on to Louisburg."

Defendants' motions for nonsuit were overruled. The jury's verdict established that plaintiff was injured and damaged by the negligence of Horton *alone;* that plaintiff was not contributorily negligent; and that plaintiff was entitled to recover $5,900.00 from defendant Horton. From judgment entered against him on the verdict defendant Horton appeals, assigning as error the failure of the judge to sustain his motion for nonsuit, the admission of plaintiff's estimate of his (Horton's) speed, and certain portions of the charge.

*Yarborough, Blanchard & Tucker by Irvin B. Tucker, Jr., for plaintiff appellee.*

*Dupree, Weaver, Horton & Cockman by F. T. Dupree, Jr. and Jerry S. Alvin for Wesley Vernon Horton, defendant appellant.*

SHARP, J.   Plaintiff's evidence, taken as true and considered in the light most favorable to him, was sufficient to withstand the motion for nonsuit. If Horton approached the intersection at a speed in excess of 60 MPH — and we must assume that he did, *Hutchens v. Southard,* 254 N.C. 428, 119 S.E. 2d 205 —, he violated G.S. 20-141(b) and (c) and was thus guilty of negligence *per se. Redden v. Bynum,* 256 N.C. 351, 123 S.E. 2d 734. Horton contends, however, that his speed was not a proximate cause of his collision with plaintiff; that his negligence was completely insulated by that of Jones when the latter entered No. 401 from a servient road directly in the path of Horton's approaching automobile. This contention is unsound. Plaintiff's evidence would permit the jury to find (1) that Horton's excessive speed made it impossible for him to control his automobile and (2) that Horton's failure to keep a proper lookout in the direction of his travel was the reason he did not see plaintiff's Austin-Healey leave the pavement at the moment it did. *Aldridge v. Hasty,* 240 N.C. 353, 82 S.E. 2d 331; *Riggs v. Motor Lines,* 233 N.C. 160, 63 S.E. 2d 197. It was not inevitable that Horton, because of Jones' negligence, should collide with plaintiff. Had Horton remained on the pavement, there would have been no collision. Under the evidence, it was for the jury to say whether Horton was traveling at an unlawful rate of speed without keeping a proper lookout and, if so, whether such negligence caused him to leave the pavement and collide with the Austin-Healey with such force that it was almost demolished. Conceding that Jones' entrance into the highway confronted Horton with a sudden emergency, plaintiff's evidence tends to show that Horton's excessive speed contributed to the emergency. Therefore, upon a consideration of the motion for nonsuit, it is due plaintiff that Horton not be given the benefit of the rule that one confronted by a sudden emergency will not be held to the wisest choice of conduct but only to

such choice as a person of ordinary care and prudence, similarly situated, would have made. *Lawing v. Landis*, 256 N.C. 677, 124 S.E. 2d 877.

Plaintiff's evidence makes out a *prima facie* case that the negligence of both Horton and Jones concurred in proximately causing plaintiff's injury and damage. Plaintiff could have sued either Horton or Jones separately; he elected to sue them jointly. "The mere fact that another is also negligent and the negligence of the two results in injury to the plaintiff does not relieve either." *Green v. Tile Co.*, 263 N.C. 503, 506, 139 S.E. 2d 538, 540. And, if the jury erred in its finding that negligence on the part of Jones was not a proximate cause of plaintiff's injury and damage, on this record we are powerless to correct it, and it does not affect Horton's liability to plaintiff. Horton's motion for nonsuit was properly overruled. His demurrer *ore tenus*, interposed in this court upon the ground that it affirmatively appears from the complaint that the negligence of Jones insulated that of Horton, is likewise overruled.

Horton's second assignment of error raises the question of the admissibility of plaintiff's estimate of Horton's speed as he approached the intersection. It is the rule in this state that any person of ordinary intelligence who has had a reasonable opportunity to observe is competent to testify as to the rate of speed of an automobile. *Darroch v. Johnson*, 250 N.C. 307, 108 S.E. 2d 589; *Lookabill v. Regan*, 247 N.C. 199, 100 S.E. 2d 521; *Hicks v. Love*, 201 N.C. 773, 161 S.E. 394. In *Darroch v. Johnson*, *supra*, plaintiff's estimate of the speed of defendant's automobile as it approached him from the opposite direction, the estimate based upon an observation of 75-100 yards, was held admissible. Here plaintiff testified that he observed defendant's approach for a distance of 400-500 feet, or at least 130 yards, and that the speed of the Ford was so great that it was "swaying back and forth." Under the circumstances, even though it was nighttime, we cannot say as a matter of law that plaintiff did not have a reasonable opportunity to form an intelligent opinion as to the speed of Horton's vehicle. At night a witness may judge the speed of an automobile by the movement of its lights if his observation is for such a distance as to enable him to form an intelligent opinion. *State v. Harrington*, 260 N.C. 663, 133 S.E. 2d 452. Plaintiff's opinion testimony that the Horton vehicle was traveling "in excess of 60 MPH, between 75-80 MPH" was competent. Its weight and credibility were for the jury. *Ray v. Membership Corp.*, 252 N.C. 380, 113 S.E. 2d 806.

Defendant Horton's remaining assignments of error relate to the judge's charge, which we have examined carefully. In its entirety it fairly presented the case to the jury and contains no error prejudicial to Horton. His Honor made it quite clear that, whether Jones entered

No. 401 at the right-angle intersection or from the cutoff, it was his duty to yield the right of way to Horton if he was approaching at such a speed or from such a distance that it was not safe for him to enter No. 401 until Horton had passed. The jury evidently took the view that Horton's negligence was the sole proximate cause of the collision in question. The issues of fact raised by the pleadings and the evidence were for the jury. Our jurisdiction is limited to matters of law and legal inference. N. C. Const., Art. IV, sec. 8.

This appeal "will make no tremor on the face of the law if it fails," Harman, L. J., in *W. v. W.*, [1961] P. 113, 135, as we hold that it does.

No error.